Argued October 15, affirmed November 10, rehearing denied December 8, 1914.

# HAMM v. McKENNY.

(144 Pac. 435.)

**Adverse Possession—Prescription—Acquisition of Title—"Color of Title."**

1. A sheriff's deed, purporting on its face to convey property to the purchaser at a foreclosure sale, constitutes such "color of title" as will form a basis of a title by prescription, though the foreclosure decree was void or voidable for want of jurisdiction over defendants in the foreclosure suit.

[As to what is essential to title by adverse possession, see notes in 28 Am. St. Rep. 158; 88 Am. St. Rep. 701.]

**Appeal and Error—Harmless Error—Unnecessary Amendment.**

2. Where, in a suit to quiet title, plaintiff alleged that she was the owner and in possession of certain realty in which defendants, without right, claimed an estate adverse to her, permitting plaintiff to unnecessarily amend her complaint to set up title by prescription was harmless.

**Infants—Adverse Possession—Prescriptive Title—Evidence.**

3. In a suit to quiet title, brought by the successor of the purchaser at foreclosure sale, to whom a sheriff's deed was issued September 18, 1900, it appeared that the mortgagor and his wife died before the foreclosure suit, leaving several minor children, all of whom were of age in 1908, and that plaintiff and her predecessors had been in continued possession under the sheriff's deed from the time of its issuance. *Held* that, regardless of the validity of the decree in foreclosure, plaintiff was vested with title by prescription pursuant to Section 17, L. O. L., which prescribes the period within which actions to recover the land might have been instituted by the children under disability when the cause of action accrued.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is a suit by Mary Hamm against Gertrude McKenny, Line McKenny, Maria Prothero, William Prothero, Annie Lee, William V. Lee, Daisie Grimm, Ed. Grimm, Minnie Moore, Benjamin Pelcher, Alice May Bolan, Eva Milan, Herbert Milan, Howard Milan, and also all other persons or parties unknown to quiet

title in which the plaintiff alleges that she is the owner and in possession of certain real property in which the defendants claim an estate adverse to the plaintiff, but without any right whatever.

Denying the plaintiff's assertion of ownership, the defendants admit that they claim an interest in the realty in question amounting to a cloud upon the plaintiff's estate. They claim to deraign title from their ancestor, S. W. Milan, who with his wife executed a mortgage on the premises and afterward died, leaving children, some of whom are defendants here, the remaining defendants being either descendants of deceased children of the original mortgagor or related to them by marriage. They trace the history of a foreclosure suit based upon the mortgage mentioned and resulting in a sale of the premises, but they contend that the proceedings were so defective that plaintiff is no more than a mortgagee in possession. They pray for a decree adjudging them to be the owners in fee of the property, and pray that the court allow them to redeem the same from the mortgage and order a sale of the premises for that purpose.

The new matter in the answer is traversed in many particulars, and the plaintiff affirmatively replies that:

"She has been in the open, notorious and adverse possession of said property, claiming to own the same for more than 10 years last past."

From a decree in favor of the plaintiff quieting her title to the property, the defendants appeal.

AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the names of *Messrs. Westbrook & Westbrook* and *Mr. A. Hansen,* with oral arguments by *Mr. H. S. Westbrook* and *Mr. Hansen.*

For respondent there was a brief over the name of *Messrs. Masters, Brice & Masters,* with oral arguments by *Mr. W. Y. Masters* and *Mr. W. H. Masters.*

MR. JUSTICE BURNETT delivered the opinion of the court.

It appears that the mortgagor and his wife both died prior to the foreclosure of the mortgage. Surviving them were their children, Alfred Milan, and their daughter, Gertrude McKenny, both of whom appear to have been above the age of majority at that time. The next child was Elizabeth Milan, born April 9, 1881, and past 17 years of age when the foreclosure suit was begun on November 2, 1898. She afterward married Benjamin Pelcher, and died in 1903. She left as her sole heir Alice May Bolan, so named in this suit because she was adopted by a man named Bolan. Her age is given in the testimony at 11 years. The three remaining children of the original mortgagor were Marie Milan, Daisy Milan and Annie Milan, the latter of whom was the youngest of all the children, and aged 12 years at the commencement of the foreclosure suit. Alfred Milan died in March, 1906, and his wife in November of that year, leaving three children, Herbert, aged 14, Eva, 11, and Howard, 9 years, at the hearing of this suit. The foreclosure suit resulted in a sheriff's sale, at which the mortgagee became the purchaser and entered into possession. The sheriff's deed to her bears date September 18, 1900, and the defendants here claim from the original mortgagee, purchaser at the foreclosure sale, by a duly executed conveyance. The testimony discloses continued possession by the plaintiff and her predecessors under the sheriff's deed to the present time.

1, 2. Passing the question of whether this defense is available as against the objection that it is a collateral attack upon the decree, the controversy will be determined upon whether or not the plaintiff has title by prescription. In passing we note that at the trial the plaintiff was permitted to amend her complaint to the effect "that plaintiff had been in the open, notorious and adverse possession of the property, claiming to own same under color of title for more than ten years last past," which amendment was denied by the defendants. The defendants objected to this change in the complaint and contend that it was asserting a different cause of suit. We regard this as negligible because the plaintiff was entitled to prove her allegation of ownership by testimony establishing title by adverse possession. As said in *Neal* v. *Davis,* 53 Or. 423, 435 (99 Pac. 69, 73):

"The defendants have also pleaded title in fee in themselves which is also denied by the reply. But to prove such averment defendants are not to be confined to evidence of a paper title, or to a title derived through the deed from Mrs. Neal, as apparently it has been assumed by counsel, but evidence on their part of adverse possession of the property for the statutory period extinguishes adverse titles and ripens into a perfect title in the possessor and becomes a vested right as though evidenced by a written title" (citing *Parker* v. *Metzger,* 12 Or. 407 (7 Pac. 518); *Joy* v. *Stump,* 14 Or. 361 (12 Pac. 929); *Mitchell* v. *Campbell,* 19 Or. 198 (24 Pac. 455); *Gardner* v. *Wright,* 49 Or. 609 (91 Pac. 286).

The amendment to the complaint was unnecessary, but was harmless error.

The contention of the defendants that the plaintiff merely occupies the position of a mortgagee in possession, and that on account of such relationship to the

property they are entitled to redeem it from the lien of the mortgage, is erroneous. This proposition would be sound if the plaintiff or her predecessors in interest had entered into the possession of the mortgaged premises by the consent of the mortgagor, and an effort to redeem had been initiated within the limitation period prescribed by the statute. The right to foreclose a mortgage and the right to enforce redemption of the property from its lien are correlative in their nature, and they are governed by like limitations. The record, however, clearly establishes that the plaintiff and her predecessors in interest did not enter into possession of the premises by the consent of the mortgagor or his heirs, the defendants here. The possession was obtained through the hostile proceeding of a suit in equity having for its object the extinguishment of the title of the defendants. Conceding for the purpose of the discussion that the decree was voidable or even void for want of jurisdiction over the person of some or all the defendants in the foreclosure suit, yet the sheriff's deed purporting on its face to convey the property to the purchaser at the sale constitutes such color of title or claim of right as will form the basis of an estate in fee simple by prescription, provided the purchaser takes actual possession of the premises under the deed and maintains it openly, continuously, notoriously and adversely to the defendants and in other respects for the length of time necessary to constitute title by prescription. In *H. B. Claflin Co.* v. *Middlesex Banking Co.* (C. C.), 113 Fed. 958, on this point the court said:

"The possession of the banking company, taken on the 27th of November, 1894, was adverse to the mortgagor, his grantees, and everyone else. Had the banking company or its trustee taken possession of

the premises as mortgagees, without the foreclosure proceeding, then the result would be different, and their possession would not have been adverse: Jones, Mortgages, § 703. But when there was a foreclosure, although that foreclosure was voidable, and possession was taken under the trustee's deed, this was notice to everybody that the possession .was under claim of absolute ownership, and not as a mortgagee, and such a repudiation of the trust as sets the statute of limitations in operation"—citing many authorities.

In *Brynjolfson* v. *Dagner*, 15 N. D. 332 (109 N. W. 320, 125 Am. St. Rep. 595), speaking of the defendant in a similar position, the court said:

"It may be true that Dagner was in a position to claim the rights of a mortgagee in possession by reason of the facts just mentioned, and that a court of equity would, if the circumstances required it, sustain that claim, in order to protect and adjust the rights of the parties with respect to the land. Counsel, however, falls into the error of assuming that Dagner was in fact a mortgagee in possession, because a court of equity might treat him as such under certain circumstances. There is a wide distinction between an actual mortgagee in possession and one who in equity may be dealt with as such in order to afford equitable relief. The fiction by which an adverse claimant is deemed a mortgagee in possession is resorted to and applied after the adverse claim is found to be invalid, but the defeated claimant is nevertheless entitled to equitable relief. In short, in order to place appellants in the position of mortgagees in possession, we must first decide that their adverse claim is invalid. It will be seen, then, that respondent's argument is utterly illogical. It not only virtually admits the adverse possession, which is the very fact which it seeks to disprove, but also assumes that plaintiff can question the validity of the adverse claim, which is the very thing which Section 7002 forbids one in his position to do. We do not wish to be understood as admitting that an actual or conventional mortgagee in possession

may not, under some circumstances, hold possession adversely to the mortgagor.''

See, also, *Bradbury* v. *Dumond,* 80 Ark. 82 (96 S. W. 390, 11 L. R. A. (N. S.) 772); *Rogers* v. *Benton,* 39 Minn. 39 (38 N. W. 765, 12 Am. St. Rep. 613); *Russell* v. *Lumber Co.,* 45 Minn. 376 (48 N. W. 3); *Jellison* v. *Halloran,* 44 Minn. 199 (46 N. W. 332); *Goodell* v. *Starr,* 127 Ind. 198 (26 N. E. 793); *Sutton* v. *Jenkins,* 147 N. C. 11 (60 S. E. 643); *Mears* v. *Somers Land Co.,* 18 N. D. 384 (121 N. W. 916); *Mitchell* v. *Vest,* 157 Iowa, 336 (136 N. W. 1054); *Jones* v. *Hiller,* 65 Fla. 532 (62 South. 583); *Power* v. *Kitching,* 10 N. D. 254 (86 N. W. 737, 88 Am. St. Rep. 691); *Waldron* v. *Harvey,* 54 W. Va. 608 (46 S. E. 603, 102 Am. St. Rep. 959); *Joplin Brewing Co.* v. *Payne,* 197 Mo. 422 (94 S. W. 896, 114 Am. St. Rep. 770). It is plain from the precedents cited that title by adverse possession was initiated in favor of the plaintiff and her predecessors in interest at least as early as September 18, 1900, the date of the sheriff's deed.

3. The remaining question to be determined is whether the testimony shows that this condition of affairs continued for the requisite period. It is said in Section 17, L. O. L., that:

''If any person entitled to bring an action mentioned in this chapter, or to recover real property * * be at the time the cause of action accrued, * * within the age of twenty-one years; * * the time of such disability shall not be a part of the time limited for the commencement of the action, but the period within which the action shall be brought shall not be extended more than five years by any such disability, nor shall it be extended in any case longer than one year after such disability ceases.''

73 Or.—23

We proceed to apply this section to the descendants of the mortgagor. Alfred Milan, the son, died in March, 1906. Considering the fact that he was, at all the time, above the age of majority, we note that for nearly six years after the date of the sheriff's deed he was living and the statute of limitations, or, in other words, the prescriptive period, was running against him. Annie Milan, the youngest daughter, was 12 years of age at the commencement of the foreclosure suit. Her disability of minority would expire in 9 years afterward, or in 1907. Adding the additional prolongation of one year, the prescription would reach its consummation against her November 2, 1908. The same is true of her older sisters, parties to this suit. Respecting Elizabeth Milan, who was 17 years of age at the beginning of the suit, we note that she died in 1903, at the age of 22 years, she having been born in 1881. It is apparent, therefore, that the suit had begun its operation as against her also. Upon this point we advert to *Northrop* v. *Marquam,* 16 Or. 173 (18 Pac. 449). In that case Northrop, the decedent, had made a will bequeathing his property to his wife and his three living children. In eight months after his death there was born to his widow a posthumous child, Hettie Northrop. The defendant in the suit claimed under a deed from the executrix of the will, which authorized her to sell the property. Hettie lived three years and died, leaving as her heirs her mother and her two brothers and a sister. The action was ejectment against Marquam, who claimed title by prescription under the deed which he claimed was color of title sufficient to support his prescriptive right. The court, while sustaining his claim to three fourths of the property, held that the will was utterly void as to Hettie; no mention having been made in the will about her.

Considering the question of what effect the statute of limitations had upon the interest in the land in controversy which descended to Mrs. Northrop upon the death of Hettie and which became vested in the other children after their mother's death, the court said:

"The same principles of law must be applied to this interest, which is applicable to the others, except that if Marquam's possession was adverse during the lifetime of Mrs. Northrop, and she had notice of such adverse possession, then the statute of limitations commenced to run as against such interest and was not stopped by her death. The rule is subject to but few exceptions that when the statute of limitations has once commenced to run, in any case it will not cease to be arrested in its operation by any subsequent event not within the saving clause of the statute. * * Mrs. Northrop did not labor under any disability at the time this descent was cast upon her, and she was capable of being informed and having notice of the nature, character and extent of Marquam's possession, and whether it was adverse or not."

In the case at bar all the children of the mortgagor arrived at the age of majority and were subject to all the burdens of the statute of limitations, which commenced to run against them and expired so as to preclude their descendants from claiming any title here. The result is that the decree of the Circuit Court is affirmed.          AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.