Argued December 6, 1973, affirmed March 7, 1974

MEKULICH, *Respondent and Cross-Appellant, v.*
LIDDYCOAT ET UX, *Appellants.*
519 P2d 378

*Nikolaus Albrecht,* Portland, argued the cause and filed a brief for appellants.

*J. Robert Jordan,* Portland, argued the cause for respondent and cross-appellant. With him on the brief were Francis F. Yunker and Darrell E. Bewley, Portland.

O'CONNELL, C. J.

This is an action for ejectment. Plaintiff also seeks recovery of treble damages under ORS 105.810 and punitive damages. The trial court granted plaintiff's prayer for ejectment and awarded double damages. Defendants appeal the ejectment decision and plaintiff cross-appeals the decision awarding double damages instead of treble damages.

In 1965 plaintiff purchased Lot 7 and a part of Lot 6, in the Laurelhurst residential section of the City of Portland. In 1969 defendants purchased a parcel of land consisting of Lot 5 and a part of Lot 6. Plaintiff's and defendants' land would be contiguous but for a narrow triangular strip of land two feet wide at the rear of the lot and tapering to a point at the front of the lot which was owned by the City of Portland. A row of rosebushes planted by plaintiff's predecessor in interest has separated plaintiff's and defendants' parcels since 1944. Sometime prior to June, 1972, defendants decided to widen their driveway which adjoined the row of rosebushes. They ordered a survey of their parcel, which disclosed that their prop-

erty line lay on plaintiff's side of the row of rosebushes. In June, 1972, defendants tore out most of the rosebushes. Plaintiff replanted the bushes, whereupon defendants again removed them and erected a fence along the property line marked out by the survey. Shortly thereafter plaintiff commenced this action.

The principal issue on appeal involves the manner in which plaintiff pleaded her cause of action. In her complaint she simply averred that she "owned" the disputed strip. At the beginning of the trial plaintiff's counsel disclosed in his opening statement that plaintiff's assertion of ownership was based upon adverse possession. Defendants objected to this statement on the ground that the complaint did "not allege the elements of possession for ten years, adverse, continuous and notorious." The trial court took the objection under advisement and in the meantime allowed plaintiff's counsel to introduce evidence to prove title by adverse possession subject to a later ruling on the objection. The trial court later informed the parties that "If I find it necessary for you to plead it, I will allow you to amend your Complaint to conform to the proof." He then turned to defendants' counsel and said, "You are fully prepared to defend on adverse possession?" To this defendants' counsel responded, "No." Later the court made its ruling final, holding that ownership through adverse possession could be established without pleading it. Nevertheless, the court allowed plaintiff to amend her complaint to conform to the proof, adding "and I have heard or seen nothing that would indicate that this puts the defendants at any disadvantage, so I think that just as an insurance for your pleadings * * * you should file an amended complaint alleging the elements. All right. It's understood there

would be an objection to that." Defendants' counsel responded "Yes."

On appeal defendants reassert their contention that the original complaint was defective in failing to disclose the basis for plaintiff's assertion of title and that the amended complaint after trial did not cure the defect. It is defendants' position that they "would have won their case had they been given notice of the issue before the court," because "they could have prepared their case to contradict plaintiff's adverse possession claim".

Plaintiff reasserts her contention that the source of title need not be alleged in the complaint.

■■ Plaintiff's position is established by previous decisions of this court. We have held that an allegation of ownership is, without more, sufficient to permit proof of title by adverse possession.[1]

Whether in a suit or action in which adverse possession is to be a matter in issue, a complaint in such general terms is adequate to give the defendant fair notice of the nature of plaintiff's claim is a question upon which there is a difference of opinion.[2] It is

[1] Du Val v. Miller, 183 Or 287, 192 P2d 249, 192 P2d 992 (1948); Mascall v. Murray, 76 Or 637, 149 P 517, 149 P 521 (1915); Neal v. Davis, 53 Or 423, 99 P 69, 101 P 212 (1909); Savage v. Savage, 51 Or 167, 94 P 182 (1908); Cooper v. Blair, 50 Or 394, 92 P 1074 (1907); Zumwalt v. Madden, 23 Or 185, 31 P 400 (1892).

If, on the other hand, a party alleges that the source of his title is by adverse possession, it is held that he must allege facts sufficient to support his claim. Lamford Lumber Co. v. Lemons, 206 Or 140, 289 P2d 684, 291 P2d 733 (1955); Reeves v. Porta, 173 Or 147, 144 P2d 493 (1944); Laurance v. Tucker, 160 Or 474, 85 P2d 374 (1939); Chapman v. Dean, 58 Or 475, 115 P 154 (1911).

[2] See, e.g., Annotation: Defense of Adverse Possession of

possible that in some situations the defendant might be at a disadvantage in the preparation of his case as a result of the failure of plaintiff to specify the source of his title. However, where defendant is in doubt as to the factual source of plaintiff's title, there is open to him a motion to make more definite and certain and if, at trial, he claims surprise, he may request and the court will in the proper case grant a continuance. This, of course, is not a complete answer to the problem because the same argument could be advanced with equal force to permit generality in pleading where we now require specificity. However, we think that actions raising the issue of title to property are distinctive with respect to problems posed. It appears to us that in most cases where the source of title would be a significant feature in the preparation of a lawsuit a party could anticipate the nature of the adverse party's claim. This is most clearly seen in cases where the parties owning adjacent parcels of property are in dispute over the location of their common boundary line. It is unlikely in such cases that a defendant asserting that the boundary line was within the area of land possessed by the plaintiff would not anticipate a claim of adverse possession by the plaintiff.

And although perhaps not so apparent, the same would also seem to be true where title is asserted in other than boundary cases. If the defendant has record title, the chances are great that the plaintiff is relying upon a theory of adverse possession.

Statute of Limitations as Available Under General Denial or Plea of General Issue in Ejectment Action, 39 ALR2d 1426; Lamford Lumber Co. v. Lemons, *supra* note 1. See also Smith v. Algona Lumber Co., 73 Or 1, 136 P 7, 143 P 921 (1914); Stephenson v. Van Blokland, 60 Or 247, 118 P 1026 (1911).

The more important point to observe is that in almost all litigation involving the title to land the controversy which precedes the filing of the lawsuit ordinarily discloses the nature of the plaintiff's claim. Thus, there is little chance that the defendant would be caught by surprise merely because the complaint failed to specify the source of the plaintiff's title. We adhere to our former cases holding that it is not necessary to plead adverse possession as the source of the plaintiff's title.

■ The remaining question is whether the trial court erred in awarding double damages under ORS 105.815 instead of treble damages under ORS 105.810, as plaintiff claims. There is substantial evidence in the record to support the trial court's conclusion that defendants had probable cause to believe that they had title to the strip in dispute.

Plaintiff does not challenge on cross-appeal the trial court's refusal to award punitive damages.

Judgment affirmed.